UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

C. DAVID MORRISON,

    Movant

v.                                     CIVIL ACTION NO. 2:03-2225
                                       (Criminal No. 2:00-00037-01)

UNITED STATES OF AMERICA,

    Respondent

## MEMORANDUM OPINION AND ORDER

Pending is the movant's motion pursuant to 28 U.S.C. § 2255, filed October 3, 2003.

The movant was convicted by a jury on a 23 count superseding indictment for, *inter alia*, failing to account for and pay over taxes, embezzling from a federally funded organization, making false statements, engaging in a conspiracy to defraud the United States, aiding and abetting money laundering, and similar offenses. Following his conviction, movant was sentenced to 97 months imprisonment, a five year term of supervised release, a $15,000 fine, and restitution in the amount of $692,318.11, imposed jointly and severally with his individual and corporate co-defendants, Donald Gene Cabell and American Development Corporation.

The movant noticed a direct appeal of his conviction and sentence. The appeal was unsuccessful. After exhausting his direct appeal rights, movant filed the instant motion, which was referred to the United States Magistrate Judge. On May 14, 2004, the court received the magistrate judge's proposed findings and recommendation (PF&R). On June 18, 2004, the movant, by counsel, filed his objections after receiving an extension of time to do so.

### I.

The proposed findings and recommendation (PR&R) contain a very thorough examination and recitation of the substantial record in this action. The court revisits that treatment only where necessary to provide context.

The movant contends generally that he was provided ineffective assistance of counsel. In his objections, he asserts (1) he "withdrew" from a conditional plea agreement to the two tax counts in an unknowing and involuntary fashion, without a full understanding of the significance and reasons for that action, (2) he was not zealously defended by his retained counsel, and (3) his counsel failed to construct a viable defense

2

theory and consequently faced formidable problems in presenting the defense strategy he chose.[1]

---

[1]Movant further objects to a finding by the magistrate judge that his former counsel, Robert B. Allen, withdrew from representation early in the case because he was owed $79,000 by the movant at that time. Movant appears to contend that any discussion of his indebtedness to his attorneys is immaterial. Inasmuch as the finding does not affect the outcome, the court declines to resolve the matter.
Movant also contends as follows:

> The [magistrate] [j]udge's findings appear to challenge only the factual assertions in David Morrison's Petition and do not challenge the legal argument presented therein. Accordingly, the objections below will focus on the factual conclusions of Judge Stanley. <u>The Movant respectfully directs the Court's attention to his initial Petition and his Reply to the Government's Response to this Petition for legal argument in support of his Motion.</u>"

(Mov.'s Objecs. at 2 (emphasis supplied)). To the extent movant seeks to incorporate by reference additional, unspecified objections to the PF&R, the attempt must fail. Federal Rule of Civil Procedure 72(b) provides "within 10 days after being served with a copy of the [magistrate judge's] recommended disposition [of a prisoner petition], a party may serve and file <u>specific</u>, written objections to the proposed findings and recommendations." Fed. R. Civ. Proc. 72(b) (emphasis supplied). The court is required only to review <u>de novo</u> those portions of the PF&R to which specific objections have been lodged. 28 U.S.C. § 636(b)(1). The court thus confines its analysis to movant's specific objections.

II.

A. The Governing Standard

The standard governing ineffective assistance claims was announced in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Strickland</u> requires a two-part showing as follows: (1) counsel's performance must have fallen "below an objective standard of reasonableness," and (2) that "deficient performance" must have "prejudiced the defense." <u>Id.</u> at 687-88. The deference afforded trial counsel under <u>Strickland</u> is "appropriately extensive, because appellate courts are poorly suited to second-guess trial strategy and on-the-fly decisions of trial counsel." <u>Humphries v. Ozmint</u>, 397 F.3d 206, 234 (4th Cir. 2005)(citing <u>Strickland</u>, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.")).

The analysis thus begins with the determination of whether movant's lawyer's performance fell below an objective standard of reasonableness. In making the required showing, it

4

is incumbent upon the movant to overcome the weighty presumption that his lawyer's conduct fell somewhere within the spectrum of reasonable professional assistance. Viewed with these standards in mind, the court examines each of movant's objections.

First, movant contends he withdrew from the plea agreement in an unknowing and involuntary fashion, without a full understanding of the significance and reasons for that action. The court observes, as did the court of appeals, that the movant was the longtime chief executive officer of a major healthcare provider. He also attained a master's degree in hospital administration. It is thus reasonable to conclude that, as a consequence of his education and experience, he was not simply a "potted plant" of sorts, unaware of what was taking place around him at the aborted plea hearing and for the seven days of trial that ensued.

The court need not, however, speculate in this regard. Movant's own affidavit, attached to his section 2255 motion, demonstrates his awareness of the significance of the court's pretrial rulings and their consequences. (See Aff. of C. David Morrison ¶ 10 (stating "It was clear by the time I appeared before the Court to enter my plea that the Court's pre-trial evidentiary rulings would prevent Mr. Lees from presenting at

5

trial the only theory of defense which he had been able to develop under existing law" -- movant apparently referring to the two tax counts to which his exposure would have been limited under the conditional plea agreement)). Armed with this awareness, the movant inexplicably failed to act or, apparently, even to inquire further of his lawyer or the court.

At any time during the hearing, trial, or the lengthy intervening recesses, movant could have inquired of his lawyer as to why the plea was not accepted and what, if anything, he could do to successfully enter the plea if that was indeed his desire. The court of appeals noted as much in its decision affirming the movant's conviction. See <u>United States v. Morrison</u>, No. 01-4336, slip op. at (4th Cir. Feb. 7, 2002) (noting "If there was any ambiguity or misunderstanding <u>by the defendant</u> about the court's use of the term 'specific intent,' <u>it was incumbent upon the defendant</u> or defense counsel to clear that up with the court and to satisfy the court that the defendant was voluntarily entering a knowing and intelligent guilty plea.") (emphasis supplied).

Instead, movant sat silent, awaiting the outcome of the jury's deliberations, perhaps in the hope of an acquittal based upon his lawyer's determined, and oft-successful, efforts to place his theory of defense before the fact finder. (PF&R at 21-

6

24). To now vacate the movant's conviction and sentence would be the equivalent of rewarding his studied or careless listlessness and, more importantly, would result in a "transparent misuse of the habeas court's power of hindsight." Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005).

Second, movant contends he was not zealously defended by his lawyer. That observation, however, cannot stand in view of the substantial record to the contrary. One need look no further than the PF&R to see the lengths to which defense counsel went to aggressively represent his client, often walking a very fine line to provide the best trial court representation while, at the same time, preserving substantial grounds for appeal. Without the benefit of hindsight, it must be remembered that the movant's lawyer (1) successfully negotiated a conditional plea agreement for the movant, (2) quite adroitly, and without objection, inserted argument into his opening statement that powerfully conveyed the absence of specific intent, (3) persistently noted the movant's good motives and the resultant benefit to the nearby community, painting the movant as an honest individual who had both his employer and the community at heart in conducting his affairs, (4) successfully argued for and received an instruction that segued nicely with his theory of the

7

case, and (5) made a persuasive presentation during his closing argument that the government had failed to prove specific intent. To now find counsel provided constitutionally deficient representation would upend the long-settled Strickland standard.

Finally, movant contends his lawyer failed to create a viable defense and consequently faced formidable problems in presenting the defense strategy he chose. The argument, however, is once again a misplaced attempt to introduce hindsight into the equation. Viewed without that post hoc perspective, the defense case portrayed the defendant as an intelligent individual faced with hard economic choices and a man who, most importantly, had no malevolent desire to violate the law. Overlaid throughout was the inference that if the hospital suffered, so too would the surrounding community through loss of jobs and a major healthcare provider. In the midst of the West Virginia coalfields, where jobs and healthcare are both paramount concerns, a jury might struggle long and hard in weighing the government and defense presentations, even apart from the court's instructions.[2]

---

[2] Although it is not a specter courts wish to linger upon, jury nullification is still often argued implicitly to criminal juries with varying degrees of success. Further, although irrelevant to the prejudice prong, the possibility of jury nullification is properly considered by a habeas court in evaluating counsel's choice of trial strategy. See Strickland, 466 U.S. at 695.

8

Inasmuch as counsel constructed a viable and reasonable defense theory of the case, which he pursued vigorously both prior to and during trial, the court is unable to conclude that he acted in a constitutionally deficient manner.

### III.

Based upon the foregoing discussion, the court ORDERS that the section 2255 motion be, and it hereby is, denied.

The movant has sixty days from the entry of this order in which to appeal the denial of his § 2255 motion. Failure within sixty days from this date to file with the Clerk of this court a notice of appeal of this order and the Judgment thereon or to file with the Clerk of the United States Court of Appeals for the Fourth Circuit a request for a certificate of appealability thereof will render this order and the Judgment thereon final and unappealable.

The Clerk is directed to forward copies of this written opinion and order to the movant, all counsel of record, and the United States Magistrate Judge.

ENTER: June 16, 2006

John T. Copenhaver, Jr.
United States District Judge